UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CRISTIAN JUAREZ GASPAR,

      Petitioner,

      v.

WARDEN *et al.*,

      Respondents.

CAUSE NO. 3:26cv652 DRL-SJF

OPINION AND ORDER

Immigration detainee Cristian Juarez Gaspar, by counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging he is unlawfully confined in violation of the laws or Constitution of the United States.

Mr. Juarez Gaspar is a citizen of Mexico who entered the United States without inspection. He claims he arrived in 2002 when he was a child. In 2017, he was granted relief under Deferred Action for Childhood Arrivals (DACA) by the United States Citizenship and Immigration Services (USCIS).[1] In May 2024, he was arrested by police in Indiana on criminal charges. He was subsequently taken into custody by United States Immigration and Customs Enforcement (ICE) agents in Indiana pursuant to an administrative warrant, served with a notice to appear in immigration court, and then released back to state authorities. In July 2025, USCIS terminated his DACA deferred-action status. In April 2026,

---

[1] DACA is a program that allows noncitizens who entered the United States as children to apply for a two-year forbearance of removal, which may be renewed, and to obtain work authorization and eligibility for certain federal benefits. *See Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 10 (2020).

his criminal case was dismissed. Upon his release from state custody, he was taken into custody by ICE agents in Indiana. He is currently detained at Miami Correctional Facility pending the outcome of his removal proceedings. He argues that he has been unlawfully denied an opportunity for release on bond because officials view him as categorically ineligible for bond under 8 U.S.C. § 1225(b)(2). He seeks immediate release from custody or a prompt custody redetermination hearing before an immigration judge.

In an order to show cause, the court directed the respondents to answer the petition in light of *De Jesús Aguilar v. English*, No. 3:25cv898 DRL-SJF, 2025 WL 3280219, 8 (N.D. Ind. Nov. 25, 2025), *appeal docketed*, No. 26-1145 (7th Cir. Jan. 26, 2026), which joined a large majority of other courts in concluding that § 1225(b)(2) does not apply to noncitizens when they are not "seeking admission" within the statute's meaning. *See also Singh v. English*, No. 3:25cv962, 2025 WL 3713715, 5 (N.D. Ind. Dec. 23, 2025) ("In short, under § 1225(b)(2), an alien must be an 'applicant for admission,' and the alien must be 'seeking admission,' and an examining immigration officer must determine that this alien 'is not clearly and beyond a doubt entitled to be admitted' for mandatory detention to occur under this subsection."). The respondents were instructed to address why this case differs from *Aguilar* and *Singh*, why the court should examine subject matter jurisdiction differently, and whether there is cause to address the outcome differently. That response was filed, and Mr. Juarez Gaspar filed a reply.

As a preliminary matter, Mr. Juarez Gaspar was ordered to show cause why every respondent but the Miami Correctional Facility Warden, the only respondent who exercises "day-to-day control" over him, should not be dismissed under *Kholyavskiy v. Achim*, 443 F.3d

946, 952 (7th Cir. 2006). Relying on *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), the court of appeals concluded the proper respondent in an immigration habeas case challenging the constitutionality of a petitioner's confinement is the warden of the facility where the petitioner is being held, not a supervisory official who has the authority to free the petitioner. *See also Doe v. Garland*, 109 F.4th 1188, 1192 (9th Cir. 2024); *Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 444 (3rd Cir. 2021). He says he does not object to the dismissal of the other respondents as long as the dismissal is without prejudice, so as to preserve his right to seek relief from these officials if necessary. The court concludes that dismissal of the non-custodial respondents without prejudice is appropriate. For clarity, the court refers to the responding party as the Warden from this point forward.

The Warden (through his federal counsel) repeats his arguments from *Aguilar* and other recent cases that the court lacks jurisdiction over the petition and that Mr. Juarez Gaspar's detention is authorized by § 1225(b)(2). These arguments were rejected in *Aguilar* and *Singh* (and other decisions). *See supra*; *see also Mejia Diaz v. Noem*, No. 3:25cv960, 2025 WL 3640419 (N.D. Ind. Dec. 16, 2025) (Brisco, J.). The court continues to be of the view that jurisdiction is secure insofar as this opinion goes, and that § 1225(b)(2) cannot reasonably be interpreted in the manner urged by the government.

Notably, the court of appeals recently found in deciding a motion for a stay pending appeal that the government was not likely to succeed on the merits of its argument that the mandatory detention provision contained in § 1225(b)(2) applies to individuals who are arrested in the interior of the United States, *see Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025), and thereafter reached an opinion on the merits that

echoed what this court has done, though one judge concurred in the judgment and not in each part of the opinion's rationale and one judge dissented such that at times it reads as 2-1 decision and at times, in effect, as a 1-1-1 decision, *see Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 2026 WL 1223250 (7th Cir. May 5, 2026). The Second Circuit, Sixth Circuit, and Eleventh Circuit reached a similar conclusion on the merits to *Aguilar* and *Singh*. The court also read the split decisions from the Fifth Circuit and Eighth Circuit. These opinions, together with others, illustrate just how complicated this patchwork of statutes is, but the court remains persuaded in its current course under *Aguilar* and *Singh*, not least in light of *Castañon-Nava*.

The question remains whether there is anything unique here that would warrant a different conclusion than that reached in both *Aguilar* and *Singh*. The court can find no such reason. Whether Mr. Juarez Gaspar is an "applicant for admission" within the meaning of § 1225(b)(2), he cannot be said to be "seeking admission" for the same reasons the court articulated in both *Aguilar* and *Singh*.

That leads the court to 8 U.S.C. § 1226(a), the "default rule" for detention of noncitizens who are "already present in the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). "On a warrant issued by the Attorney General, an alien may be arrested and detained" while removal proceedings are pending, and the Attorney General "(1) may continue to detain the [noncitizen]; and (2) may release the [noncitizen] on (A) bond . . . or (B) conditional parole" until removal proceedings conclude. 8 U.S.C. § 1226(a). The court, as it always does, begins with the statute's plain language. It is permissive, not mandatory, and it affords an election (insofar as the limitations in § 1226(c) do not apply of course).

4

Immigration officials issued a warrant for Mr. Juarez Gaspar's arrest [5-2]. By statute, a noncitizen detained pursuant to a warrant may be released by the Attorney General (subject to certain statutory limitations that no one argues apply here), or he may be detained pending a decision on whether he will be removed from the United States. *See* 8 U.S.C. §§ 1226(a), (c). Our high court likewise has recognized the permissive nature of this language. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 526-27 (2021); *Jennings*, 583 U.S. at 306.

The Attorney General has delegated this discretion by regulation—first, to specified immigration officers who may "release an alien not described in [§ 1226(c)(1) (regarding criminal aliens)], under [bond or conditional parole]; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8). That is called an initial custody determination. After that initial custody determination, a noncitizen may apply to an immigration judge for a custody redetermination, and the immigration judge is authorized to exercise the authority in § 1226 "to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released." 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1); *see also* 8 C.F.R. § 1003.19 (detailing procedures for custody or bond redeterminations by an immigration judge). When a noncitizen files this motion, an immigration judge, under immigration court rules, must "in general" schedule a "hearing for the earliest possible date," though in "limited circumstances" the immigration judge may rule on a bond redetermination request without a hearing. Immig. Ct. Practice Manual § 9.3(d). A

noncitizen may appeal a decision relating to bond and custody determinations to the Board of Immigration Appeals. 8 C.F.R. §§ 236.1(d)(3), 1236.1(d)(3).

Both noncitizens and the government alike must comply with our immigration laws, as they are written and as they must work within constitutional demands. *See, e.g., Zadvydas v. Davis*, 533 U.S. 678, 701 (2001); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). The government has predetermined the procedures that apply to noncitizens who are arrested and detained under § 1226, and due process requires merely that these procedures be fairly given, not taken away. *See Accardi*, 347 U.S. at 266-68; *see, e.g., Jideonwo v. I.N.S.*, 224 F.3d 692, 697 (7th Cir. 2000); *Montilla v. I.N.S.*, 926 F.2d 162, 166 (2d Cir. 1991). Mr. Juarez Gaspar gives no reason to believe this process is insufficient. Absent something else, the court will order no more and no less than what is expected of immigration officials by law. *See Accardi*, 347 U.S. at 268; *see also United States v. Nixon*, 418 U.S. 683, 696 (1974) ("So long as this regulation [delegating Attorney General's discretion] remains in force the Executive Branch is bound by it, and indeed the United States as the sovereign composed of the three branches is bound to respect and to enforce it.").

The court has the same expectation of compliance for the petitioner—follow the rules. It appears Mr. Juarez Gaspar did not seek a custody redetermination before an immigration judge before filing his petition. When "exhaustion of administrative remedies is not statutorily mandated," "sound judicial discretion governs" whether it must be done. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004) (citation omitted). A court may require administrative exhaustion in § 2241 cases challenging a noncitizen's detention as a matter of judicial economy and administrative comity. *Id.* at 1017. A petitioner "with a

statutory argument that has a reasonable prospect of affording him relief may not skip the administrative process and go straight to federal court," *id.* at 1018, though "individual interests demand that exhaustion be excused when . . . appealing through the administrative process would be futile because the agency . . . has predetermined the issue," *id.* at 1016.

Perhaps he thought it futile, because an immigration judge might follow *In re Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), but thus far in this circuit that guidance has been found erroneous such that, as the days pass, that futility seems harder to presume. At the same time, maybe only a United States Supreme Court decision will make it so. The Warden argues it is "not certain" how an immigration judge would rule on a motion for custody redetermination filed by Mr. Juarez Gaspar. Based on the early stages of now many § 2241 petitions and an unbroken record of denials of custody redeterminations (even when noncitizens have been arrested pursuant to a warrant like he was) because immigration officials believe they must be classified under § 1225(b)(2), the court finds there was no reasonable prospect of success, absent a determination by the court that he must be classified under § 1226(a), not § 1225(b)(2).

Recent proceedings in a case out of California suggest that *Hurtado* remains a barrier to relief for petitioners like Mr. Juarez Gaspar. In February 2026, a judge in the Central District of California issued an order vacating *Hurtado* on behalf of a nationwide class of individuals who were arrested by ICE within the interior of the United States and denied an opportunity for bond. *See Bautista v. Santacruz*, No. 5:25cv1873, 2026 WL 468284 (C.D. Cal. Feb. 18, 2026), *appeal docketed*, *In re Lazaro Maldonado Bautista*, No. 26-1044 (9th Cir. Feb. 23, 2026). The government appealed; and, at the government's request, the Ninth Circuit

recently stayed the court's class certification order and final judgment "insofar as they extend beyond the Central District of California," and stayed the court's post-judgment order vacating *Hurtado* in its entirety. *Maldonado Bautista*, No. 26-1044 (9th Cir. order dated Mar. 31, 2026). The district judge's decision vacating *Hurtado* is thus unlikely to change the outcome of a custody redetermination motion filed by an individual like Mr. Juarez Gaspar, who is outside of California. These recent proceedings also indicate that the government remains committed to its interpretation of § 1225(b)(2) notwithstanding the prior rulings of this court and others.

This doesn't affect the court's jurisdiction, but it does affect his relief. The appropriate remedy is to put the ball in his court to file a motion for custody redetermination in his pending removal proceedings, with the benefit of a finding from the court that he is not categorically ineligible for bond under 8 U.S.C. § 1225(b)(2). The court likewise must deny immediate release because Mr. Juarez Gaspar has not met his burden of showing his current detention unlawful under § 1226.

He argues that the court should require the government to bear the burden of proving that he should not be released at any forthcoming custody redetermination hearing, whereas under existing procedures "[t]o secure release, the alien must show that he does not pose a danger to the community and that he is likely to appear for future proceedings." *Johnson*, 594 U.S. at 527; *see also* 8 C.F.R. § 236.1(c)(8) ("alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding"). It is not the court's job to rewrite the law. And his argument is effectively premature, indeed unripe, when no one can say how

the government may proceed. If he is given a custody redetermination hearing, he may in fact prevail; and, if not, he has administrative remedies available to challenge an adverse ruling. *See Z.G. v. Olson,* ___F. Supp.3d___, 2026 WL 1279081, 2-4 (N.D. Ind. May 11, 2026) (Leichty, J.) (requiring exhaustion of administrative remedies in context of immigration bond determination). Without a prior denial on the merits alleged to be erroneous, the court leaves the parties to follow their process under § 1226.

For these reasons, the court:

(1) DISMISSES WITHOUT PREJUDICE Todd Blanche, Acting Attorney General of the United States; Markwayne Mullin, Secretary of the United States Department of Homeland Security; Todd M. Lyons, Acting Director of United States Immigration and Customs Enforcement; and Director of United States Immigration and Customs Enforcement Chicago Field Office as respondents;

(2) DENIES the petition [ECF 1], except to FIND that Cristian Juarez Gaspar must be classified under 8 U.S.C. § 1226(a), including for purposes of any custody redetermination; and

(3) DIRECTS the clerk to enter final judgment and to close this case.

SO ORDERED.

June 4, 2026                      *s/ Damon R. Leichty*
                                         Judge, United States District Court